64 A.3d 611

PENNSYLVANIA STATE ASSOCIATION OF JURY COMMIS-
SIONERS and Larry A. Thomson, President Pennsylvania
State Association of Jury Commissioners and Elected Jury
Commissioner in Butler County and Martha S. Smith, Duly
Elected Jury Commissioner of Chester County and Mary Jane
Dellafiora, Duly Elected Jury Commissioner for Indiana Coun-
ty and G. Richard Zimmerman, Duly Elected Jury Commission-
er for Washington County, Appellants,

v.

COMMONWEALTH of Pennsylvania and Honorable Thomas
Corbett, Governor of Pennsylvania and Honorable Kathleen
G. Kane, Attorney General of Pennsylvania, Appellees.

County Commissioners Association of Pennsylvania, Intervenor.

Supreme Court of Pennsylvania.

Argued March 5, 2013.

Decided March 14, 2013.

370

Adam Gordon Klein, Joseph A. Klein, P.C., Robert L. Knupp, Harrisburg, Knupp Law Offices, LLC, Anthony T. McBeth, Harrisburg, for County Commissioners Association of Pennsylvania, Intervenor.

David C. Cleaver, Keller, Keller and Beck, LLC, Waynes-boro, Samuel C. Stretton, Law Office of Samuel C. Stretton, West Chester, for Appellant.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

This direct appeal from an order denying injunctive and declaratory relief by an *en banc* panel of the Commonwealth Court concerns various constitutional challenges to a law recently enacted by the General Assembly known as Act 108 of 2011.[1] Specifically, it is alleged that Act 108 is violative of: (1) the "single subject rule" of Article III, Section 3 of the Pennsylvania Constitution;[2] (2) the separation of powers doctrine as embodied within Article V, Sections 1 and 10 of the Pennsylvania Constitution establishing a unified judicial sys-

---

1. Act of Dec. 15, 2011, P.L. 442, No. 108. entitled:

    AN ACT Amending the act of August 9, 1955 (P.L. 323, No. 130), entitled, as amended, "An act relating to counties of the first, third, fourth, fifth, sixth, seventh and eighth classes; amending, revising, consolidating and changing the laws relating thereto; relating to imposition of excise taxes by counties, including authorizing imposition of an excise tax on the rental of motor vehicles by counties of the first class; and providing for regional renaissance initiatives," in contracts, further providing for applicability, for the abolishment of the office of jury commissioner and for sales of personal property and surplus farm products.

    Act 130 of 1955 is commonly referred to as the County Code, which is contained in Title 16 of the Pennsylvania Statutes.

2. **Article III, Section 3—Form of Bills.**

    No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

tem supervised by this Court;[3] and (3) the due process clause of the Fourteenth Amendment to the United States Constitution under the void for vagueness doctrine.[4] The Commonwealth Court, in a 4–3 decision, rejected the constitutional challenges and dismissed the action. After initial review, this Court ordered the parties to present oral argument on the first two issues. After careful consideration, we now reverse the Commonwealth Court in regard to the Article III, Section 3 single subject challenge and, therefore, respectfully declare Act 108 to be unconstitutional. Given this disposition, it is unnecessary to consider the remaining arguments.

On June 24, 2010, House Bill 1644, Printer's Number 2060, passed the state House of Representatives unanimously. The bill proposed amendments to Article XVIII, Section 1805 of the County Code, *as codified* 16 P.S. § 1805, by revising subsection (b) relating to surplus farm equipment, and adding a subsection (c) to provide procedures for the commissioners of counties of the third through eighth class to hold auction sales of personal property via online and electronic forums. As reflected in the title of H.B. 1644, the act would have amended the County Code "in contracts, further providing for sales of personal property and surplus farm products." H.B. 1644, P.N.2060 (2011).

The bill was then sent to the Senate and, after first consideration on the Senate floor, it was referred to the Senate Appropriations committee. When the bill left the committee,

3.  Article V, Section 1—Unified Judicial System.
    The judicial power of the Commonwealth shall be vested in a unified judicial system [ . . . ].
    Article V, Section 10—Judicial Administration.
    (a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace [ . . . ].

    *        *        *

    (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts [ . . . ].

4.  14th Amendment to the United States Constitution, Section 1.
    [ . . . ] No state shall [ . . . ] deprive any person of life, liberty, or property without due process of law [ . . . ].

however, it had been significantly amended to include a second provision, a proposed addition of a subsection (f) to Article IV, Section 401 of the County Code.[5] The amendment proposed as follows:

After review of the procedures in effect within the county to ensure that lists of potential jurors are a representative cross section of the community, the governing body of a county of the second class A or third through eighth class may adopt, by a majority vote, a resolution abolishing the office of jury commissioner. Upon approval of the resolution, the office of jury commissioner shall expire at the completion of the current jury commissioners' terms of office. The resolution shall not be passed in any year in which the office of jury commissioner is on the ballot.

H.B. 1644, P.N. 2730, § 2 (2011).[6]

The revised H.B. 1644 then passed the Senate on November 16, 2011 by a 40–9 vote with no discussion, and was returned to the House floor for concurrence in the amendments on December 5, 2011. After a short debate, the revised H.B. 1644 passed the House by a vote of 149–40. Ten days later, the Governor signed the bill into effect, and it became Act 108 of 2011.

Upon the enactment of Act 108, the Pennsylvania State Association of Jury Commissioners and duly elected jury commissioners from Butler, Chester, Indiana, and Washington counties (collectively, Appellants) filed, in the Commonwealth Court's original jurisdiction, an action for declaratory and injunctive relief against the Commonwealth, Governor, and Attorney General, contending that Act 108 was unconstitutional in accord with the three rationales set forth *supra*, pp. 612–13. In due course, the County Commissioners Association of Pennsylvania (Appellee) sought, and was granted, intervenor

---

5. 16 P.S. § 401 (mandating the elected offices that each county shall have).

6. The amended House Bill 1644 also contained a third provision which proposed to amend Chapter I, Section 102(a) of the County Code, 16 P.S. § 102(a), to clarify that this provision applied to counties of the second class-A, as well as counties of the third through eighth class.

status. The Governor and the Attorney General were then dismissed upon consent of all parties.

The Commonwealth has never taken a substantive position on the merits of this case. Appellants and the County Commissioner Association of Pennsylvania as Intervenor–Appellee, however, filed cross-motions for judgment on the pleadings before the Commonwealth Court, which, sitting *en banc,* found for Appellee in a 4–3 decision and dismissed the action. *Pa. State Ass'n of Jury Comm'rs v. Commonwealth,* 53 A.3d 109 (Pa.Cmwlth.2012) (*en banc* ) (*"PSAJC "*). Concerning the single subject challenge, the majority noted that an act passes Article III, Section 3 muster if the law containing more than one topic "can reasonably be viewed as falling under one broad subject." *Id.* at 113 (quoting *City of Phila. v. Commonwealth,* 575 Pa. 542, 838 A.2d 566, 587 (2003)). However, the majority further noted that this Court has cautioned that no proposed unifying scheme can be "so broad as to stretch 'the concept of a single topic beyond the breaking point' or 'encompas[s] a limitless number of subjects'...." *Id.* at 116–17 (quoting *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* 583 Pa. 275, 877 A.2d 383, 396 (2005) (*"PAGE "*)).

Based upon these standards, the majority below determined that the two provisions of Act 108, providing for the abolition of the office of jury commissioner and procedures for the sale and auctions of surplus farm and personal property, fell under the unifying theme of "county commissioners' powers." *Id.* at 118. The court further held that this overarching topic was not too broad to violate the single subject rule, and thus found that Act 108 satisfied the constitutional imperative of Article III, Section 3.[7]

President Judge Pellegrini authored a dissent. While recognizing that a law can survive a single subject challenge

---

7. Because the majority below found the single subject requirement satisfied, it also opined regarding Appellants' separation of powers and void for vagueness arguments, rejecting each. As we find the single subject mandate determinative, there is no need for us to recount the Commonwealth Court's discussions of these alternative theories.

so long as the differing portions of the act are "germane" to each other, the dissent expounded that "no two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough." *Id.* at 124 (Pellegrini, P.J., dissenting) (quoting *PAGE*, 877 A.2d at 395; *Payne v. Sch. Dist. of Coudersport Borough*, 168 Pa. 386, 31 A. 1072, 1074 (1895)). In the dissent's view, the unifying theme of "powers of county commissioners" was a perfect example of a common focus broadened too much:

> All bills enacted involve someone's power. A bill could allow the governor to regulate Marcellus Gas and allow him or her to consolidate school districts. Under the majority, the subjects would be germane because they involve the powers of the governor.

*Id.* at 125.

In the dissent's view, a bill authorizing county commissioners to hold electronic auctions of private property and abolish the elected office of jury commissioner was no different. Indeed, noted the dissent, "Act 108 deals with two different types of powers that the County Commissioners, as a unitary governing body, are entrusted," as the selling of personal and farm property is an executive function, while the abolition of the jury commissioner by resolution is legislative in nature. *Id.*[8]

Before expressing the positions of the parties, we first briefly review the historical discussion of the single subject rule as contained within our 2003 decision in *City of Philadelphia*, where we were called upon to examine Act 230 of 2002, which "effect[ed] several changes in local governance and related administrative matters" all contained within Title 53 of

---

8. As this Court has previously recognized, "[i]t is clear that county commissioners perform complex, multiple roles of mixed legislative, executive[,] and administrative functions." *Allegheny County v. Allegheny Court Ass'n of Prof'l Employees*, 517 Pa. 505, 539 A.2d 348, 354 (1988) (examining whether the transfer of funds between one county account to another to satisfy an arbitration award is a legislative, executive, or administrative function); *see also Franklin County Prison Bd. v. Pa. Labor Relations Bd.*, 491 Pa. 50, 417 A.2d 1138 (1980) (considering whether the fixing of salaries by a county salary board is a legislative function).

the Pennsylvania Statutes (Municipalities). *City of Phila.*, 838 A.2d at 571. Over the course of the legislative process, the bill that eventually became Act 230 went from a five-page piece of legislation adding a citizenship requirement for the members of a municipality's business improvement authority, to a 127–page document that included various provisions related to the Pennsylvania Convention Center, the Philadelphia Parking Authority, and the Philadelphia Finance Director. *See id.* at 571–573.

In examining the constitutionality of Act 230, we noted that the single subject rule limits the practice of "logrolling," defined as the ability for legislators to put in "distinct and independent subjects of legislation" as a means of disguising the primary purpose of the bill. *Id.* at 586.[9] Prior to the inclusion of Article III, Section 3 in the constitution, logrolling frequently occurred as a means to obtain the assent of the legislature for passage of a bill, when, if the distinct subjects contained within the omnibus legislation had been proposed for passage separately, the likelihood of individual passage was slight. *Id.* Thus, Article III, Section 3 serves the dual purposes of preventing the enactment of laws that otherwise would not be passed, and promoting the enhanced scrutiny of single topic bills. *Id.*

■ The *City of Philadelphia* Court then noted that compliance with the single subject rule is two-fold. First, the title of the bill must clearly express the substance of the proposed law. *Id.* Second, the differing topics within the bill must be "germane" to each other, although what this Court has considered "germane" and "not germane" has fluctuated throughout the years. *Id.* at 586–87. In 1927, we applied the germane-

9. Indeed, when the Article III provisions regulating legislative procedures were included in the Constitution of 1874 (commonly referred to as the "Reform Constitution"), the practices of "[l]ast-minute consideration of important measures, logrolling, mixing substantive provisions in omnibus bills, low visibility and hasty enactment of important, and sometimes corrupt, legislation, and the attachment of unrelated provisions to bills in the amendment process" were common in the legislature. *Id.* at 589 (quoting Robert F. Williams, *State Constitutional Limits on Legislative Procedure: Legislative Compliance and Judicial Enforcement*, 48 U. Pitt L.Rev., 797, 798 (1987)).

ness construct fairly strictly, opining that a bill that regulated land surveyors and professional engineers was unconstitutional under the single subject rule, because the proposed law concerned two different professions. *Commonwealth ex rel. Woodruff v. Humphrey*, 288 Pa. 280, 136 A. 213 (1927), *cited in City of Phila.*, 838 A.2d at 587. Likewise, just nine years later, we invalidated a law designed to regulate water canals within the Commonwealth, because the act concerned the maintenance of waterways, the commercial sale of water, and the acquiring of canal lands, and we deemed these to be non-germane subjects. *Yardley Mills Co. v. Bogardus*, 321 Pa. 581, 185 A. 218 (1936), *cited in City of Phila.*, 838 A.2d at 587.

Pennsylvania courts then became increasingly deferential towards the General Assembly in Article III, Section 3 challenges as the years passed. *City of Phila.*, 838 A.2d at 587. Indeed, the Commonwealth Court upheld challenges to laws that: amended two separate titles of the Pennsylvania Consolidated Statutes under the unifying topic of "transportation," *see Common Cause/Pennsylvania v. Commonwealth*, 710 A.2d 108, 120 (Pa.Cmwlth.1998) *aff'd per curiam*, 562 Pa. 632, 757 A.2d 367 (2000), cited in *City of Phila.*, 838 A.2d at 587–88; and revised provisions vis-à-vis municipalities and parking authorities because the two topics were "inextricably intertwined." *City of Phila. v. Schweiker*, 817 A.2d 1217, 1225 (Pa.Cmwlth.2003), *cited in City of Phila.*, 838 A.2d at 588.

Accordingly, by 2003, germaneness had evolved to a standard of "whether the court can fashion a single, over-arching topic to loosely relate the various subjects included in the statute under review." *City of Phila.*, 838 A.2d at 587. Nevertheless, we cautioned that we should be careful not to render Section 3 "impotent to guard against the evils that it was designed to curtail" by fashioning a theme that is all-encompassing in its broadness. *Id.* at 588 (citing, e.g., *DeWeese v. Weaver*, 824 A.2d 364 (Pa.Cmwlth.2003) (finding the theme "business of the courts" too encompassing to uphold a law regulating DNA records and apportioning negligence liability); *Pa. Ass'n of Rental Dealers v. Com.*, 123 Pa.Cmwlth. 533, 554 A.2d 998 (1989) (holding that the topic of "economic

well-being of the Commonwealth" would turn the germaneness requirement into a nullity)).

Thus, in *City of Philadelphia*, notwithstanding the loosening of this Court's scrutiny under the single subject rule, we concluded that Act 230 violated the rule because the primary object of the statute was the amendment of Title 53—Municipalities, and "virtually all of local government is a 'municipality.'" *Id.* at 589. Given the absolute breadth of such a topic, we were constrained to hold that Act 230 was *de facto* an omnibus bill that contravened the mandates of Article III, Section 3.

However, under this same framework, this Court has recently upheld two pieces of legislation. The bill under scrutiny in *PAGE* was originally designed to provide for background checks by the State Police for persons involved in harness racing, but evolved into the Pennsylvania Gaming Act. Among other challenges, an advocacy group opposed to gambling in Pennsylvania contended that the act violated the single subject rule. After recounting the guidelines, as expressed in *City of Philadelphia*, and more briefly above, we held that the majority of the act survived Section 3 scrutiny because the law provided for the regulation of gaming. *PAGE*, 877 A.2d at 396. In comparing the *PAGE* statute to the one invalidated in *City of Philadelphia*, we noted: "The single topic of gaming does not encompass the limitless number of subjects which could be encompassed under the heading of 'municipalities.'" *Id.*

In *Spahn v. Zoning Board of Adjustment of the City of Philadelphia*, 602 Pa. 83, 977 A.2d 1132 (2009), we considered an act that amended the First Class City Home Rule Act by increasing fines for violations of the Philadelphia City Code, and also modified the provisions regarding standing in zoning appeals in Philadelphia. After again relating the controlling standards applicable to Section 3 challenges, including a recognition, that when a statute pertains to a broad topic, we should examine whether the provisions in the bill can be narrowed to a more specific aspect of governance, we upheld the law, finding that it: (1) amended only the First Class City

Home Rule Act, and therefore only related to the governance of Philadelphia; and (2) altered provisions contained within the same article of the Home Rule Act defining the "general grants of powers [and] limitations" for home rule. *Id.* at 1148–49. For these reasons, a majority of the Court concluded that the law at issue in *Spahn* was more closely aligned with the Gaming Act approved in *PAGE* than the omnibus bill rejected in *City of Philadelphia. Id.*

The arguments of the parties in the instant case largely echo the majority and dissenting opinions of the Commonwealth Court below. First, no party disputes that the title of the revised H.B. 1644/Act 108 sufficiently states the contents of the bill. Thus, the only contention before this Court concerns the second prong of a single subject analysis: whether the topics contained within the body of H.B. 1644/Act 108 are sufficiently germane to each other.

Appellants, like President Judge Pellegrini, contend that this case is most closely aligned with *City of Philadelphia*, as the narrowest unifying theme available is the "powers of county commissioners" and, similar to the "powers of municipalities" justification rejected in *City of Philadelphia*, accepting this scope of germaneness would render the protections of Article III, Section 3 meaningless. Appellants further distinguish this case from *PAGE*, noting that unlike the singular topic of gaming, county commissioners within their own bailiwick wield limitless powers, both legislative and executive in nature. *See supra* note 8.[10] Finally, Appellants point to the legislative history of Act 108, and contend that the addition of Section 401(f) by the Senate Appropriations committee is a textbook example of impermissible logrolling.

Appellee counters by refuting the contention that "powers of county commissioners" is as expansive as "powers of municipalities." In Appellee's view, Act 108 not only speaks to the powers of county commissioners, but perhaps also to the allegedly more limited topic of the fiscal duties of county commissioners, as both Section 401(f) and the amended Sec-

10. A board of county commissioners generally regulates the affairs of its county in every conceivable way. *See* 16 P.S. §§ 509(a), 1701.

tion 1805 conceivably expand the commissioners' ability to save and raise funds for the county's treasury. Appellee concludes by arguing that *Spahn* is the most controlling of this Court's cases, because the powers granted to a home rule municipality and the powers granted to county commissioners are essentially identical.

We begin our analysis by noting that acts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed. *PAGE*, 877 A.2d at 393. "Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution." *Id.* If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional. *Id.*

We find that notwithstanding the great deference we recognize and do pay to our legislature, Appellants have met the high standard in this instance. First, while *Spahn* concerned a single municipality in the Commonwealth (Philadelphia), and *PAGE* involved a singular subject matter (gaming), Act 108 affects every county in the Commonwealth, save for Philadelphia, Allegheny, and counties which have previously passed home rule charters. On this point alone, we agree with Appellants that this case is located much closer to *City of Philadelphia* than *Spahn* or *PAGE* on the spectrum of Article III, Section 3 constitutionality. Second, we agree with President Judge Pellegrini that auctioning private property and farm surplus, and eliminating an elected public office are "so far apart that there is no common focus," *PSAJC*, 53 A.3d at 125 (Pellegrini, P.J., dissenting), without "encompass[ing a] limitless number of subjects." *PAGE*, 877 A.2d at 396. Indeed, the Commonwealth Court dissent's hypothetical relating to a *de facto* omnibus bill concerning the Governor's powers to "regulate Marcellus Gas and ... consolidate school districts" passing constitutional muster under the Commonwealth Court majority's holding appears to ring true. *PSAJC*, 53 A.3d at 125 (Pellegrini, P.J., dissenting).

We further agree that the dual governmental function of a board of county commissioners—executive and legislative—militates against finding Act 108 to be in concert with the single subject rule, in light of Section 401(f) invoking the legislative power of a resolution and Section 1805 falling under the executive function of contract execution. More so, and related thereto, Section 401(f) and Section 1805 amend two separate articles of Chapter 1 of the County Code: Article IV (County Officers) and Article XVIII (Contracts). *Cf. Spahn*, 977 A.2d at 1148 (finding amendments to be permissible in part because "they related to a single [a]rticle of the Home Rule Act. . . ."). Thus, Act 108, while relating to the local governing body of county commissioners, cannot be narrowed to a more specific governmental function. *Cf. id.; accord City of Phila.*, 838 A.2d at 588 ("there must be limits" to the expansiveness of legislation, else "Section 3 would be rendered impotent to guard against the evils that it was designed to curtail.").

■ Finally, this Court recognized in *City of Philadelphia* that bills are often times revised and amended during the legislative process, and the addition of new material during that process is not always improper. *City of Phila.*, 838 A.2d at 586–87. Nevertheless, the mandates of Article III, Section 3 are achieved only "where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title." *Id.* at 587.[11]

Were we to accept that the label "powers of county commissioners" was not overly broad for purposes of the single subject rule, the addition of Section 401(f) to H.B. 1644 would be permissible (absent, of course, any other constitutional

11. While this language suggests that a bill is constitutional so long as the contents of it are otherwise consistent with the bill's title, we reiterate that the provisions within the body of the bill must be germane to each other as well. *See Payne*, 31 A. at 1074. To intimate that a bill passes Article III, Section 3 muster merely because what is contained in the title is also contained within the body would write the single subject rule out of the constitution, as the title could merely be rewritten every time the bill was amended.

infirmity). However, it seems clear that the original objective of H.B. 1644 was to amend an executive function of county government by permitting electronic and online auctions of property. The addition of a completely unrelated legislative operation to the bill under the auspices of "powers of county commissioners" could only have survived the instant single subject challenge "if the point of view [were] carried back far enough" to eviscerate the rule. *PAGE*, 877 A.2d at 395 (quoting *Payne*, 31 A. at 1074).

■ For these reasons, we find that Act 108 clearly, palpably, and plainly violates the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. The order of the Commonwealth Court is therefore reversed.[12] Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justice SAYLOR and EAKIN, Justice TODD and Justice McCAFFERY join this opinion.

12. As an aside, we note that our decision today falls after the March 12, 2013 deadline for the circulation and filing of nominating petitions by potential candidates for the office of jury commissioner. In conjunction with their appeal to this Court, Appellants, on January 24, 2013, filed a "Petition to have the Office of Jury Commissioner Appear on the County Ballots Pending the Resolution to the Appeal in the Captioned Matter." In a *per curiam* order, this Court denied the petition on February 13, 2013.

At this juncture, we find it prudent to comment that Appellants' "petition," while labeled otherwise, in substance constituted an Application for Stay or Injunction Pending Appeal of the Commonwealth Court's decision pursuant to Pa. R.A.P. 1732. Under Rule 1732, an "[a]pplication for a stay of an order of a lower court pending appeal ... must ordinarily be made in the first instance to the lower court...." Pa. R.A.P. 1732(a); *see also Pa. Pub. Util. Comm'n v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983). The record currently before this Court is devoid of any such application being made to the Commonwealth Court. Thus, regardless of the merits of Appellants' ancillary filing, it contained a fatal procedural defect.