IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Germantown Cab Company,                     :
                          Appellant         :
                                            :
            v.                              :
                                            :    No. 1078 C.D. 2015
Philadelphia Parking Authority              :    Argued: February 9, 2016


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABL JAMES GARDNER COLINS, Senior Judge



OPINION BY
JUDGE COVEY                              FILED: March 1, 2016


            Germantown Cab Company (Germantown) appeals from the Philadelphia County Common Pleas Court's (trial court) May 14, 2015 order, denying its appeal from the Philadelphia Parking Authority's (Authority) decision. Germantown essentially presents two issues for this Court's review: (1) whether the Authority violated this Court's January 6, 2012 order enjoining the Authority from confiscating or impounding cars for violating Section 5714(a) of the act commonly known as the Parking Authority Law (Act),[1] and (2) whether the Authority violated Germantown's rights under the Fourteenth Amendment of the United States (U.S.) Constitution.[2]

_____

[1] Act of December 30, 2001, P.L. 2002, reenacted and amended by the Act of July 16, 2004, P.L. 758 (Act 94), *as amended,* 53 Pa.C.S. § 5714(a).

[2] The Authority argues that Germantown's appeal should be dismissed for failure to exhaust administrative remedies because the Authority's order should have been appealed to the Authority's Board as opposed to the trial court pursuant to Section 1(c) of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.190(c). However, because the Authority did not raise this issue before the trial court, it is waived. *In re F.C. III,* 2 A.3d 1201 (Pa. 2010). Accordingly, we are prohibited from addressing it.

## Background

Germantown states in its brief that it "is a [Public Utility Commission (]PUC[)]-certified motor carrier that operates approximately 170 taxicabs in a designated service territory that is divided by the Philadelphia-Montgomery County line. [Germantown] does not own any medallions and **does not have a certificate of public convenience issued by the** [**Authority**]." Germantown Br. at 6 (emphasis added). However, this Court stated in *Germantown Cab Company v. Public Utility Commission,* 97 A.3d 410 (Pa. Cmwlth. 2014): "[U]nder both Act 94 and Act 119, [Section 5714(d)(2) of the Act], 53 Pa.C.S. § 5714(d)(2) explicitly preserved Germantown's authority to conduct partial-rights operations in that portion of the City as stated in its Commission-issued CPC [certificate of public convenience] and **specifically transferred regulatory authority over its operations in that area to the Authority**." *Germantown,* 97 A.3d at 417 (emphasis added); *see also Bucks Cnty. Servs., Inc. v. Phila. Parking Auth.,* 104 A.3d 604 (Pa. Cmwlth. 2014) ("the [Authority] has the power to promulgate and enforce regulations relating to service provided by [Germantown] within the City of Philadelphia.").

Section 5714 of the Act provides in relevant part:

**(a) Vehicles generally.—**

(1) A vehicle may not be operated as a taxicab with citywide call or demand rights in cities of the first class unless a certificate of public convenience is issued by the[3] [A]uthority authorizing the operation of the taxicab and a medallion is attached to the hood of the vehicle. Prior to the issuance of a medallion, the certificate holder shall have its vehicle inspected by the [A]uthority.

---

[3] Prior to an amendment effective July 5, 2012, the first sentence stated "unless a certificate of public convenience is issued by "'an' authority[,]" as opposed to the current language: "'the' authority[.]"

2

(2) The [A]uthority shall require, by order or regulation, that each vehicle within its jurisdiction pursuant to this chapter submit to periodic inspections by [A]uthority personnel to ensure that the vehicle meets the requirements of this subchapter and [A]uthority regulations.

. . . .

**(c) Service.--**A vehicle authorized by a certificate to provide call or demand service within cities of the first class may transport persons and their baggage upon call or demand and parcels, packages and property at the same basic metered rates charged to passengers:

(1) between points in the city of the first class for which its certificate is issued;

(2) from any point in the city of the first class for which its certificate is issued to any point in this Commonwealth;

(3) from any point in this Commonwealth to any point in the city of the first class for which its certificate is issued if the request for service for such transportation is received by call to its centralized dispatch system; and

(4) from any point in the city of the first class for which its certificate is issued to any point outside this Commonwealth as a continuous part of a trip.
. . . .

 **(e) Penalties involving certificated taxicabs.--**Operating a certificated taxicab in violation of subsections (a) and (b) or authorizing or permitting such operation is a non[-]traffic summary offense.  Offenders of subsections (a) and (b) may also be subject to civil penalties pursuant to section 5725 (relating to civil penalties).

**(f) Unauthorized vehicles.--**Operating an unauthorized vehicle as a taxicab, or giving the appearance of offering call or demand service with an unauthorized vehicle, without first having received a certificate of public convenience and a medallion is a non[-]traffic summary offense in the first instance and a misdemeanor of the third degree for each offense thereafter.  The owner and the driver of a vehicle being operated as or appearing as a

3

taxicab without a certificate of public convenience and a medallion are also subject to civil penalties pursuant to section 5725. Civil penalties which have been assessed and collected shall be deposited in the fund.

**(g) Confiscation and impoundment of vehicles.—**

(1) The [A]uthority is empowered to confiscate and impound vehicles, medallions and equipment which are utilized to provide call or demand service in cities of the first class without a proper certificate of public convenience issued by the authority or which are in violation of regulations of the authority.[4]  Upon satisfaction of all penalties imposed and all outstanding fines assessed against the owner or operator of the confiscated vehicle and payment of the costs of the [A]uthority associated with confiscation and impoundment, the vehicle, medallion and equipment shall be returned to its registered owner or registered lienholder.

53 Pa.C.S. § 5714.

This Court in *Sawink, Inc. v. Philadelphia Parking Authority,* 34 A.3d 926 (Pa. Cmwlth.), *aff'd*, 57 A.3d 644 (Pa. 2012) (*per curiam*), held that "Section 5714 of the [Act] does not authorize the impoundment sanction where a taxicab, certificated by the PUC, accepts a hail in Philadelphia in violation of Section 5714(a) [of the Act.]" *Id.* at 932.

**Facts**

On August 1, 2014, the Authority's Taxicab and Limousine Division (TLD) Inspector James Burke (Inspector Burke) and his partner observed Germantown taxicab number G-91 pick up three passengers at 11th and Pattison Streets in Philadelphia. The inspectors followed the cab to its destination in the vicinity of 700 Annin Street, Philadelphia, whereupon they stopped the cab for

---

[4] Prior to an amendment effective July 5, 2012, the first sentence of Section 5714(g) of the Act was preceded by the words: "In addition to penalties provided for in subsection (f)[.]"

providing unauthorized point to point service in Philadelphia. Upon inspection of the taxicab, the inspectors ascertained that the vehicle did not have a current TLD inspection sticker or a partition shield, had not been inspected by the Authority's TLD, and the driver was not an Authority certified driver. Inspector Burke stated that because it is a safety concern for taxicabs to be driven in Philadelphia without an inspection, it impounded Germantown's taxicab pursuant to Section 1017.32 of the Authority's Regulations, 52 Pa. Code § 1017.32.

On August 7, 2014, an impoundment hearing was held before an Authority hearing officer. On September 3, 2014, the Authority entered an order determining that the impoundment was proper. On October 20, 2014, Germantown appealed from the Authority's order to the trial court. On May 14, 2015, the trial court denied Germantown's appeal. Germantown appealed to this Court.[5]

## Discussion

Germantown first argues that the Authority violated this Court's January 6, 2012 order enjoining the Authority from confiscating or impounding cars for violation of Section 5714(a) of the Act. Specifically, Germantown contends that this Court's order in *Sawink* prohibits any impoundment of taxicabs for violating Section 5714(a) of the Act unless or until that order has been dissolved, vacated or modified by this Court.

---

[5] "Where the trial court does not take any additional evidence, our scope of review over the decision of a local agency is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the procedure before the local agency was contrary to statute, and whether necessary findings of fact are supported by substantial evidence." *Kovler v. Bureau of Admin. Adjudication,* 6 A.3d 1060, 1062 n.1 (Pa. Cmwlth. 2010). "On issues of statutory interpretation this Court's scope of review is plenary, and our standard of review is *de novo.*" *Doherty v. Dep't of Transp., Bureau of Driver Licensing,* 921 A.2d 532, 535 n.3 (Pa. Cmwlth. 2006).

5

Initially, the *Sawink* Court's Order expressly stated:

AND NOW, this **6th day of January, 2012**, the motion for summary relief filed by Sawink, Inc., Germantown Cab Company and Rosemont Taxicab Co., Inc. is hereby GRANTED. **The [Authority] is enjoined from confiscating or impounding the taxicabs of Sawink, Inc., Germantown Cab Company and Rosemont Taxicab Co., Inc. where one of its taxicabs has committed a violation of Section 5714(a) of the [Act], . . . in a manner consistent with the conduct that prompted the impoundments referenced in the above-captioned petition for review.** This injunction does not restrict the [Authority] with respect to the imposition of other sanctions authorized by the [Act].

*Sawink, Inc.,* 34 A.3d at 932 (emphasis added). Germantown argues that because the *Sawink* Court enjoined the Authority from confiscating or impounding Germantown's taxicabs **where one of its taxicabs has committed a violation of Section 5714(a) of the Act**, the Authority is forever enjoined from confiscating or impounding Germantown's taxicabs pursuant to Section 5714 of the Act until such Order is dissolved, vacated or modified.

However, the *Sawink* Court explicitly stated:

Section 5714(g) [of the Act] does not empower the Authority to impound taxicabs licensed by the PUC when they commit a territorial violation proscribed by Subsection (a) of Section 5714 [of the Act], *i.e.,* picking up a hail in Philadelphia. At a minimum, the statute is ambiguous, which requires a narrow construction of the impoundment penalty in favor of Petitioners.

*Sawink,* 34 A.3d at 930. Accordingly, *Sawink* is inapposite and thus not controlling. As stated in the *Sawink* Order: "The [Authority] is enjoined from confiscating or impounding the taxicabs of [Germantown] where one of its taxicabs has committed a violation of Section 5714(a) of the [Act], . . . **in a manner consistent with the**

6

**conduct that prompted the impoundments referenced in the above-captioned petition for review**." *Id.* at 932 (emphasis added). It is undisputed that the conduct referenced in the petition for review involved a territorial violation. In the instant case, although Germantown's taxicab was **stopped** for providing point to point service in Philadelphia, it was **impounded** for its violation of Section 1017.32 of the Authority's Regulations which requires a current TLD inspection sticker before providing service in Philadelphia. Moreover, as noted above, after this Court's decision in *Sawink*, the Legislature amended Section 5714(g) of the Act, thereby removing the ambiguity which was at issue in *Sawink*. Accordingly, *Sawink* is not applicable to the matter currently before us.

Germantown contends that because its taxicabs are PUC certified, it is not required to have a TLD inspection. Thus, its taxicab was wrongly impounded for that reason. However, Germantown's argument is incongruous to the current state of the law regarding the Authority's power over PUC certified taxicabs in Philadelphia. *See Germantown*; *Bucks Cnty. Servs.*

Both the current and the former version of Section 5714(g) of the Act authorize the Authority to impound vehicles "which are in violation of regulations of the [A]uthority." 53 Pa.C.S. § 5714(g). In the instant case, the taxicab was impounded for a violation of Section 1017.32 of the Authority's Regulations which required a current TLD inspection sticker before a taxicab can provide service in Philadelphia. *Id.*

Section 5714(g) of the Act provides in relevant part:

**Confiscation and impoundment of vehicles.—**

(1) **The [A]uthority is empowered to confiscate and impound vehicles**, medallions and equipment which are utilized to provide call or demand service in cities of the first class without a proper certificate of public convenience issued by the [A]uthority or **which are in violation of regulations of the [A]uthority. . . .**

7

53 Pa.C.S. § 5714(g) (emphasis added). Section 1017.32(a) of the Authority's Regulations provides:

> *Impoundment.* Upon observation of an impoundable offense, the Enforcement Department may direct the immediate impoundment of a vehicle, equipment or medallion under [S]ection 5714(g) of the [A]ct (relating to certificate and medallion required) and have the impounded property removed to a place of safe storage under the control of the Authority.

52 Pa. Code § 1017.52. An impoundable offense is defined, in pertinent part, in the Authority's regulations as follows:

> *Impoundable offense*--The occurrence of any of the following circumstances is an impoundable offense:
>
> (i) An unauthorized taxicab provides, or attempts to provide, call or demand service in Philadelphia.
>
> . . . .
>
> *Unauthorized taxicab*—
>
> (i) A vehicle without a current and valid TLD inspection sticker affixed as provided in [Section] 1017.32 [of the Authority's Regulations] (relating to TLD inspection sticker required).
>
> . . . .
>
> *Vehicle*--The term includes the vehicle and equipment used or capable of being used to provide taxicab service.

52 Pa. Code § 1017.51. Accordingly, because the Act authorizes the impoundment of vehicles for violating the Authority's regulations, and Germantown violated Section 1017.32 of the Authority's Regulations, the Authority acted in accordance with its power to impound Germantown's taxicab. As thoroughly addressed above and for

the reasons discussed, the *Sawink* Order is not applicable and the Authority did not act in violation thereof.

Germantown next argues that the Authority's impoundment of its taxicab violated Germantown's rights under the Fourteenth Amendment of the U.S. Constitution.[6] We disagree.

First, Germantown did not raise any constitutional issues before the Authority's hearing officer. "It is well settled that issues raised for the first time on appeal are waived." *Pa. Bankers Ass'n v. Pa. Dep't of Banking,* 962 A.2d 609, 621 (Pa. 2008).[7] "When a party fails to raise an issue, even one of a constitutional dimension, in an agency proceeding, the issue is waived and cannot be considered for the first time in a judicial appeal." *Huddock v. Pa. Dep't of Pub. Welfare,* 808 A.2d 310, 313 n.4 (Pa. Cmwlth. 2002).

However, in its argument, Germantown does not maintain that its constitutional rights were violated, but rather, that "[t]he Authority's interpretation of the statu[t]e [Sections 5714(a) and 5714(g) of the Act] also raises constitutional concerns." Germantown Br. at 25. The only case Germantown cites to in support of

---

[6] In its Statement of Errors Complained of on Appeal, Germantown contends that the Authority violated its rights under the **Fourth** Amendment of the U.S. Constitution. However, in its Statement of the Questions Involved, the Authority lists the issue as a violation of its **Fourteenth** Amendment rights. Although Germantown appears to be arguing that the Authority violated its rights under both the Fourth and the Fourteenth Amendments, neither argument is fully developed.

[7]

> It is without question that the right to a due process hearing, like most constitutional rights, can be waived. *See, e.g., Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n Valley View Downs, . . .* 926 A.2d 908, 923 ([Pa.] 2007) (*per curiam*) (finding a due process argument waived when it was not raised before the administrative agency); *In re Cicchetti, . . .* 743 A.2d 431, 443 n. 1 ([Pa.] 2000) (acknowledging that a due process claim can be waived for failure to raise it in a timely fashion); *In re Martorano, . . .* 346 A.2d 22, 27 ([Pa.] 1975) (finding a plaintiff's due process claim waived because it was raised for the first time on appeal).

*Pa. Bankers Ass'n,* 962 A.2d at 622.

its position is *South Dakota v. Opperman,* 428 U.S. 364 (1976), wherein the U.S. Supreme Court opined:

> In the interests of public safety and as part of what the Court has called 'community caretaking functions,' *Cady v. Dombrowski*, . . . 413 U.S. [433,] 441, . . . [(1973)], automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. **The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge**.

*Opperman,* 428 U.S. at 368-69 (emphasis added; footnote omitted).[8] However, this case does not support Germantown's position; it supports the Authority's contention based on the current state of the law. The Authority impounded Germantown's taxicab because it was not TLD inspected and thus was a safety concern.

> Germantown further argues that:

> Both the Pennsylvania Constitution and the [U.S.] Constitution restrict the scope of the community caretaking function and, consequently the impoundment power, to circumstances that truly pose an immediate threat to public safety, such as the operation of an unlicensed taxicab, or operation of a taxicab by an impaired driver or a taxicab in a visibly unsafe condition. **It does not and should not apply to territorial violations by certificated taxicabs**. Such violations pose no safety threat to the public and warrant lesser sanctions, such as fines, suspension, or ultimately revocation of operating rights.

---

[8] Although Germantown, in its brief, blocked a statement purportedly made by the U.S. Supreme Court, it is actually a paraphrase of the above-cited quotation. *See* Germantown Br. at 26.

Germantown Br. at 26 (emphasis added). Germantown insists this case involves a territorial violation because its taxicab was subject to PUC inspection as well as TLD inspection. The crux of Germantown's argument is that because its taxicabs are PUC-certificated, it is unconstitutional for the Authority to regulate them. Although Germantown asserts constitutional concerns, its argument is "[b]ut where, as here, a vehicle is also subject to inspections by the PUC, the lack of a [TLD] inspection sticker does not amount to a public safety issue." Germantown Br. at 27. The issue before this Court, however, is not whether the Authority has the power to regulate PUC-certificated taxicabs providing service in Philadelphia. The Authority's power has already been established in that regard. *See Germantown*; *Bucks Cnty. Servs.* The Authority here acted in accordance with the power bestowed upon it by the Legislature.

With respect to whether a statute is constitutional, the Pennsylvania Supreme Court has held:

> '[A]cts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed.' [*Pa*.] *State Ass'n of Jury Comm'rs v. Com*[*monwealth*]*,* 64 A.3d 611, 618 (Pa. 2013). Thus, a statute will not be found unconstitutional 'unless it clearly, palpably, and plainly violates the Constitution.' *Id.* If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality. *Id.*

*Commonwealth v. Neiman,* 84 A.3d 603, 611 (Pa. 2013). Germantown has not met its burden in proving that Sections 5714(a) and 5714(g) of the Act "clearly, palpably, and plainly violate[] the Constitution." *Neiman,* 84 A.3d at 611.

## Conclusion

Although Germantown's taxicab was stopped for acting outside its PUC authorized service area, i.e., providing unauthorized point to point service in

11

Philadelphia, it was impounded for violating the Authority's regulations. Because the Act authorizes the impoundment of vehicles for violating the Authority's regulations, and Germantown violated Section 1017.32 of the Authority's Regulations, the Authority acted in accordance with its power to impound Germantown's taxicab.

Germantown's argument that the Authority's impoundment of its taxicab violated Germantown's rights under the Fourteenth Amendment of the U.S. Constitution is waived for failure to raise it before the Authority's hearing officer. Assuming Germantown raised a constitutional challenge that was not waived, Germantown has not met its burden in proving that the Act and/or the Authority's regulations are unconstitutional.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Germantown Cab Company,            :
                        Appellant  :
                                   :
            v.                     :
                                   :   No. 1078 C.D. 2015
Philadelphia Parking Authority     :

# O R D E R

AND NOW, this 1st day of March, 2016, the Philadelphia County Common Pleas Court's May 14, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge