J-A21032-25

2025 PA Super 242


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:               PENNSYLVANIA
:
v.                       :
:
:
:
LUIS ANGEL ROSARIO              :
:
Appellant             :    No. 1183 MDA 2024

Appeal from the Judgment of Sentence Entered July 19, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000925-2023


BEFORE:  PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:              **FILED OCTOBER 27, 2025**

Appellant, Luis Angel Rosario, appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County following his conviction at a bench trial on the charge of firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1). On appeal, Appellant claims Subsection 6106(a)(1) is unconstitutional as applied to him. After our careful review, we affirm.

The relevant facts and procedural history are as follows: Following a traffic stop, Appellant ran from the scene, and during flight, he dropped a handgun, which the police seized. Appellant was immediately apprehended,

---

[*] Former Justice specially assigned to the Superior Court.

and on March 23, 2023, the Commonwealth filed an Information charging Appellant with receiving stolen property, 18 Pa.C.S.A. § 3925(a), firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1), and possession of a small amount of marijuana, 35 P.S. § 780-113(a)(31)(i). Appellant filed a counseled omnibus pretrial motion seeking to suppress the handgun. He also sought the dismissal of the receiving stolen property charge on the basis there was no *prima facie* evidence to support the Commonwealth's claim that the firearm was stolen.

Moreover, in the omnibus pretrial motion, he presented a claim seeking *habeas corpus* relief as to the firearm charge. Specifically, he averred the charge of firearms not to be carried without a license under Subsection 6106(a)(1) is unconstitutional as applied to him because, at the time of the incident, he was twenty years old. He noted that he was an adult just six months shy of his twenty-first birthday, yet the State of Pennsylvania will not issue a license to carry a gun in a vehicle to a person under the age of twenty-one. Accordingly, Appellant argued that he cannot lawfully be charged with failing to have a permit to carry a firearm in a vehicle when no such permit is available to him under Pennsylvania's law. Thus, citing to **New York State Rifle & Pistol Ass'n v. Bruen**, 597 U.S. 1 (2022), Appellant averred Subsection 6106(a)(1) is unconstitutional as applied to him.

On September 18, 2023, upon motion of the Commonwealth and with the agreement of defense counsel, the trial court entered an order amending

the Information to withdraw Count I, the receiving stolen property charge.

Further, by order entered on September 19, 2023, upon motion of defense counsel and without objection by the Commonwealth, the trial court declared that Count III, the possession of a small amount of marijuana charge, was withdrawn.

Thereafter, at a hearing on the omnibus pretrial motion, Appellant withdrew all claims, except for those challenging the constitutionality of Subsection 6106(a)(1) as applied to him. On November 2, 2023, the Commonwealth filed a brief in opposition to Appellant's pretrial motion for *habeas corpus* relief challenging the constitutionality of Subsection 6106(a)(1). The Commonwealth supplemented its brief in opposition on February 20, 2024.

By order entered on March 4, 2024, the trial court denied Appellant's claim for *habeas corpus* relief, and on May 29, 2024, after waiving his right to a jury trial, Appellant proceeded to a bench trial on the firearm charge. The parties agreed to proceed based on a "Stipulation of Facts" without presenting witnesses. Specifically, the parties agreed to the submission of the following "Stipulation of Facts" for the trial court's consideration:

> If called to testify, Timothy Morris would testify as follows:
>
> 1. In February 2023, Timothy Morris was employed as a criminal investigator by the Reading Police Department assigned [to] the VICE Unit.
>
> 2. On February 27, 2023, at approximately 8:27 PM, he was operating the Reading Police Vehicle equipped with emergency lights and observed a red Nissan Altima driving south in the

1200 block of N 6th Street in Reading, Berks County, Pennsylvania.

3. He observed that the left brake light was not working and as the vehicle approached the intersection of N 6th and Marion Streets, it pulled to the right side of the road against a yellow curb.

4. CI Morris then activated the emergency lights and siren to initiate a traffic stop.

5. He observed [Appellant] open the front passenger side door of the Altima and begin to run west on Marion Street.

6. [Appellant] was wearing an unzipped black jacket over a red hoodie.

7. CI Morris observed what he immediately recognized to be a handgun in [Appellant's] waistband.

8. He began to chase [Appellant] on foot as [Appellant] ran on Marion and then south on Church Street.

9. As [Appellant] was running on the sidewalk, [Appellant] was holding the front of his waistband.

10. As [Appellant] approached Robeson Street, CI Morris observed a black handgun fall out of [Appellant's] waistband and fall underneath a vehicle.

11. [Appellant] was soon apprehended.

12. [Appellant] was searched, and in his pocket was a small amount of marijuana that weighed less than 30 grams that he possessed for personal use.

13. A black Glock 20C 10mm handgun was recovered from the area where CI Morris saw the handgun fall from [Appellant's] waist.

14. The handgun was operational and loaded with ammunition.

15. [Appellant] did not have a valid and lawfully issued license to carry a firearm in a vehicle.

16. [Appellant's] date of birth is 7/**/2002.

17. On February 27, 2023, [the date of the incident, Appellant] was 20 years old.

Stipulation of Facts, filed 5/29/24, at 1-2. **See** N.T., 5/29/24, at 4.

At the conclusion of the bench trial, the trial court found Appellant guilty of firearms not to be carried without a license under Subsection 6106(a)(1), and on July 19, 2024, following a sentencing hearing, the trial court sentenced Appellant to 11½ to 23 months in jail to be followed by 3 years of probation. This timely counseled appeal followed on August 14, 2024. All Pa.R.A.P. requirements have been met.

On appeal, Appellant presents the following issues in his "Statement of Questions Involved" (verbatim):

I.    Does Pennsylvania's "Firearms Not to be Carried Without a License" statute, 18 Pa.C.S.A. § 6106, violate the Second Amendment of the United States Constitution as applied to Appellant in this matter as it impermissibly infringes upon the right of 18-to-20-year-olds to carry handguns in a vehicle transiting in public?

II.   Does Pennsylvania's "Firearms Not to be Carried Without a License" statute, 18 Pa.C.S.A. § 6106, violate Article 1, Section 21 of the Pennsylvania Constitution as applied to Appellant in this matter as it impermissibly infringes upon the right of 18-to-20-year-olds to carry handguns in a vehicle transiting in public?

Appellant's Brief at 5 (suggested answers and footnote omitted).

On appeal, Appellant argues that his conviction for firearms not to be carried without a license should be vacated since 18 Pa.C.S.A. § 6106 is unconstitutional under the Second Amendment of the U.S. Constitution, as well as the arms-bearing provision in Article 1, Section 21, of the Pennsylvania Constitution, as applied to him. He avers the statute is unconstitutional as applied to him because his age at the time of the offense (twenty years old)

- 5 -

barred him from getting a permit to carry a firearm in a vehicle under 18 Pa.C.S.A. § 6109.[1]

Initially, we note Appellant was convicted under Subsection 6106(a)(1), which provides that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a)(1). As Appellant asserts, in this Commonwealth, "[a]n individual who is 21 years of age or older may apply to a sheriff for a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth." 18 Pa.C.S.A. § 6109(b).

In the case *sub judice*, there is no dispute that Appellant was twenty years old at the time of the offense as opposed to "21 years of age or older." *Id.* Accordingly, he was precluded under Pennsylvania's firearms statutes from getting a license to carry a firearm in a vehicle.

Initially, we address Appellant's federal constitutional challenge, which is based on the Second Amendment of the United States Constitution, which states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.

---

[1] We note that Appellant claims the stipulated evidence reveals that he was carrying a firearm while in a vehicle as opposed to carrying a concealed firearm on his person. We shall, *arguendo*, accept his contention.

Const. amend. II. Relevantly, challenges to the constitutionality of a statute present a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Omar*, 602 Pa. 595, 981 A.2d 179, 185 (2009). Statutes "are strongly presumed to be constitutional." *Pennsylvania State Ass'n of Jury Com'rs v. Com.*, 619 Pa. 369, 64 A.3d 611, 618 (2013) (citation omitted). "Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution." *Id.*

This Court has explained:

A defendant may contest the constitutionality of a statute on its face or as-applied. A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a facial or as-applied unconstitutionality.

*Commonwealth v. Bradley*, 232 A.3d 747, 757 (Pa.Super. 2020) (citation omitted).

As to Subsection 6106(a)(1), Appellant contends his conduct of carrying a firearm in a vehicle is akin to carrying a gun for self-defense outside the home, and, therefore, according to *Bruen*, is protected conduct under the Second Amendment. He argues that, since his conduct is protected under the Second Amendment, under *Bruen*, it becomes the Commonwealth's burden to show the challenged statute is consistent with traditional firearm

regulations. He avers there is no tradition of prohibiting the possession of a firearm in a vehicle by a twenty-year-old citizen such as himself.

In **Bruen**, **supra**, to which Appellant cites, the United States Supreme Court ruled unconstitutional a New York law prohibiting persons from carrying handguns for self-defense unless they demonstrated a special need for self-protection distinguishable from that of the general community. In so doing, the Court held that means-end scrutiny, such as strict or intermediate scrutiny, does not apply in the context of analyzing Second Amendment constitutional challenges. Instead, the Court articulated the following two-part test that controls this Court's current review:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 24 (citation omitted).

Two years later, the U.S. Supreme Court decided **United States v. Rahimi**, 602 U.S. 680 (2024), and reiterated that "the right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.'" **Id.** at 690. "Like most rights, though, the right secured by the Second Amendment is not unlimited." **Id.** Analyzing a Second Amendment challenge entails considering "whether the challenged regulation is consistent with the principles that underpin [the Nation's] regulatory tradition." **Id.** at

692 (quoting *Bruen*, 597 U.S. at 26-31).  We must then determine whether the Commonwealth has proven that the regulation is "relevantly similar to laws that our tradition is understood to permit, apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 20) (internal quotation marks omitted).

One method we can employ to determine whether historic and modern regulations are "relevantly similar" is by looking at the "how and why" behind the regulations, *i.e.*, whether the regulations "impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified[.]" *Bruen*, 597 U.S. at 29.  *See Rahimi*, 602 U.S. at 692 ("Why and how the regulation burdens the right are central to this inquiry.").  The analysis does not require a "historical twin" or "dead ringer;" instead, the Commonwealth can point to "well-established and representative historical analogue[s]" to show that the regulation is sufficiently analogous.  *Bruen*, 597 U.S. at 30.

Furthermore, the High Court's Second Amendment precedents do not render our jurisprudence "trapped in amber." *Rahimi*, 602 U.S. at 691. Just as the Second Amendment's protection "extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not [yet] in existence [at the founding,]" so too does it permit "more than just those regulations identical to ones that could be found in 1791." *Id.* at 691-92.

That said, while we do not need a "historical twin" to deem a regulation constitutional, we "must be careful not to read a principle at such a level of generality that it waters down the right." *Rahimi*, 602 U.S. at 740.

Critically, this Court has recently interpreted both *Bruen* and *Rahimi* in cases involving challenges to Sections 6106 and 6109 on the basis that, as applied to the defendants, Pennsylvania's firearm regulations were unconstitutional since the defendants, who were aged 18-to-20 years, could not get permits to carry concealed firearms or firearms in a vehicle. Specifically, in *Commonwealth v. Williams*, 341 A.3d 144 (Pa.Super. 2025),[2] the appellant contended that Sections 6106 and 6109 were unconstitutional as applied to him because, as a nineteen-year-old person, he was unable to get a permit to carry a firearm in a vehicle.

In finding no merit to the appellant's federal constitutional claim, this Court held, in relevant part, as follows:

> [W]e conclude that Section 6109 is consistent with the Nation's historical tradition of firearm regulation. To begin, under the *Bruen* analysis, we have little trouble in saying that [the appellant's] conduct, carrying a firearm in a vehicle, is protected by the Second Amendment. *See Bruen*, 597 U.S. at 32

_____

[2] We note that, on August 1, 2025, the appellant in *Williams* filed a petition for allowance of appeal with our Supreme Court; however, the Supreme Court has not yet ruled on the petition.

(reasoning text of Second Amendment encompasses public carrying of firearms).[3]

Turning to the second step, it becomes the Commonwealth's burden to "justify its [regulation] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." The Commonwealth has presented evidence of a historical tradition of individuals aged 18-to-20 being prohibited from possessing firearms.

Since before the founding, our Nation's state legislatures have categorically disarmed groups judged too dangerous to be able to safely or responsibly bear arms. As summarized by then-Judge Amy Coney Barrett, "founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J. dissenting)[.]

In the 19th century, as guns became more dangerous and accessible, legislatures enacted a variety of prohibitions of the sale and/or possession of guns by, *inter alia*, "tramps" or "vagrants," persons of unsound mind, and intoxicated persons. At least 29 jurisdictions limited the sale of firearms to, or the possession of firearms by, individuals below a set age.

Aside from legislative prohibitions on certain groups purchasing and/or possessing firearms, the founding-era treatment of 18-to-20-year-olds as minors is likewise weighty evidence of a historical tradition. The founding "generation shared the view that minors lacked the reason and judgment necessary to be trusted with legal rights[,]" and that, accordingly, infants were subject to the 'power' of their parents until they reached age 21….[W]hen founding-era youths went off to college, universities, standing in *loco parentis*, often prohibited students from carrying firearms both on and off campus. This understanding of the legal

_____

[3] As this Court recognized in *Williams*, *supra*, the *Bruen* opinion spent little time on the issue of determining when a defendant is part of "the people" protected by the Second Amendment. The *Rahimi* majority opinion makes no mention of it. Given our holdings in the instant matter, we find it unnecessary to determine whether Appellant is part of the "the people" protected by the Second Amendment. *See Williams*, *supra* (determining that it was unnecessary to conduct an inquiry into whether the nineteen-year-old appellant was part of "the people" since it was immaterial to the ultimate decision).

status of minors at the founding and the restrictions on bearing arms to which they were subject lends itself to the conclusion that our Nation has a historical tradition of restricting the rights of those aged 18-to-20.

\*\*\*

Going even further, in the latter-half of the nineteenth century, twenty jurisdictions passed laws restricting firearm access for minors….Based upon this history of both common law and statutory restrictions on access to firearms by minors, among other groups, from the pre-founding-era through the latter half of the 19th-century, we find that a national historical tradition exists of restricting firearm access to individuals deemed unable to responsibly bear arms, particularly 18-to-20-year-olds.  The "how" and "why" of these laws and Section 6109 are likewise analogous.  The restrictions burden the right to access and possess firearms (the "how") because the defined group—here, 18-to-20-year-olds—has been judged too dangerous to allow such access (the "why").  Therefore, it follows that Section 6109 is constitutional under the standard set out in ***Bruen***.

Turning to Section 6106, [the appellant] alleges the Commonwealth cannot meet its burden "because there are no historical analogues to a licensing scheme like Section 6106[,]" *i.e.*, prohibiting the carrying of a firearm in a vehicle.  [The appellant] points out that, prior to 1931, few laws in the Commonwealth [] prohibited the carrying of firearms in general, nor did those laws require obtaining a license to do so.  Further, he claims that laws prior to 1931 set no prohibitions or licensing requirements for carrying in the available forms of transportation at the time, such as wagons, carriages, railroad cars, and on horseback.

\*\*\*

While [the appellant] makes a compelling case that our historical tradition is rather quiet on the question of carrying firearms in the available forms of transportation in the 19th century, we do not need a regulation of that sort to find Section 6106 constitutional.  This reasoning follows a "use it or lose it view of legislative authority"—it assumes that late-18th and early 19th century legislatures constitutionally could not have legislated in this fashion merely because they did not.  This rationale, however, is "flawed" and forces upon present day-legislatures "a law trapped in amber."  Such an approach would turn any Second Amendment analysis into a "historical approach so exacting as to

- 12 -

be useless, a too-sensitive alarm that sounds whenever a regulation did not exist in an essentially identical form at the founding."

Instead, this Court need only, and does, consider Section 6106 "relevantly similar" to the many "public-carry restrictions [which] proliferate[d]" after the ratification of the Second Amendment in 1791." **See Bruen**, 597 U.S. at 50….Thus, since 6106 can then be viewed through the same lens as a standard licensing scheme for concealed carry, **Bruen** is controlling, and Section 6106's prohibition on unlicensed individuals possessing a firearm in a vehicle is similarly constitutional. **See id.** at 80.

**Williams**, 341 A.3d at 154-58 (some quotation marks, quotations, and citations omitted) (footnotes omitted) (footnote added). Thus, as applied to the appellant, this Court held in **Williams** that Sections 6106 and 6109 were constitutional under the Second Amendment.

Thereafter, this Court recognized and applied the holdings in **Williams** to other cases. Specifically, in **Commonwealth v. Carthon**, 3208 EDA 2022 (Pa.Super. filed 8/5/25) (unpublished memorandum),[4] this Court, relying on **Williams**, rejected the appellant's claim that 18 Pa.C.S.A. § 6108, pertaining to carrying a firearm on the public streets of Philadelphia, is unconstitutional as applied to her because, under Section 6109, she, a person aged 18-to-20, could not obtain a license to carry a firearm on the public streets in

---

[4] **See** Pa.R.A.P. 126(b) (providing that an unpublished memorandum filed by this Court after May 1, 2019, may be cited for its persuasive value). We note that the appellant in **Carthon** has filed a petition for allowance of appeal; however, our Supreme Court has not yet ruled on the petition.

Philadelphia. We found no merit to her as-applied constitutionality claim and noted that the prohibition of firearms for those between the ages of 18-to-20 years old is "consistent with the Nation's historical tradition of firearms regulation," and, thus, constitutional. **Carthon**, 3208 EDA 2022, at *2.

Moreover, in **Commonwealth v. Beatty**, 1307-1308 MDA 2024 (Pa.Super. filed 8/7/25) (unpublished memorandum), the appellant, who was eighteen years old, claimed Section 6106, as applied to him, was unconstitutional since he could not get a license to carry a concealed firearm. Relying on **Williams**, this Court held that, as applied to the appellant's particular circumstances, Section 6106 is "'consistent with the country's historical tradition of firearms regulation.'" **Beatty**, 1307-1308 MDA 2024, at *6 (quoting **Bruen**, 597 U.S. at 17). Thus, we found no merit to the appellant's constitutionality claim.

Likewise, in the case *sub judice*, we hold that Section 6106(a)(1), as applied to Appellant's particular circumstances, is consistent with this Nation's historical tradition of firearms regulation. A "national historical tradition exists of restricting firearm access to individuals deemed unable to responsibly bear arms, particularly 18-to-20-year-olds." **Williams**, 341 A.3d at 157 This tradition applies to Appellant, who was 20 years old at the time of the firearms violation and carrying a firearm while traveling in a vehicle. Accordingly, we find no merit to Appellant's federal constitution challenge.

As to Appellant's claim that Article 1, Section 21 of the Pennsylvania Constitution provides greater protection than the U.S. Constitution, we find no merit.  As this Court held in **Williams**:

> This Court has at least twice had the recent opportunity to take up the question of whether Pennsylvania's Constitution's arms-bearing provision provides greater protection than its federal counterpart.  In both instances, this Court has declined to hold that it does.  **See Commonwealth v. Mead**, 326 A.3d 1006, 1015 (Pa.Super. 2024)[, *appeal denied*, 604 MAL 2024 (Pa. 7/23/25)] ("[Pennsylvania's] courts have repeatedly treated Article 1, Section 21 as not providing any greater restriction on government firearm regulations than the Second Amendment."); **Commonwealth v. Nieves-Crespo**, 321 A.3d 965, *13 (Pa.Super. 2024) (Table) (finding arms-bearing provisions of Pennsylvania and United States Constitutions "offer the same protection").

**Williams**, 341 A.3d at 158-59.

Thus, based on the foregoing, we hold that, as applied to Appellant, Section 6106 is constitutional and does not impermissibly infringe upon his rights to bear arms under either the United States or Pennsylvania Constitutions.  Thus, we affirm.

Judgment of sentence affirmed.

P.J.E. Panella joins the Opinion.

Judge Lane filed a Concurring Opinion in which P.J.E. Panella joins.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/27/2025</u>