J-S40029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN CHARLES WINTER | : | |
| | : | |
| Appellant | : | No. 845 EDA 2023 |

Appeal from the PCRA Order Entered March 22, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0006660-2014

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:      **FILED FEBRUARY 13, 2025**

Brian Charles Winter appeals *pro se* from the order dismissing his Post Conviction Relief Act ("PCRA") petition. ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The facts of this case were previously summarized as follows:

> At trial[,] the Commonwealth produced evidence that established that on the evening of August 11, 2014, the victims in this case, M.M., a female of 14 years of age, and K.J[.], a female of 14 years of age, were invited to [Winter's] home to drink alcohol. While in his home, [Winter] did the acts leading to his conviction. It was established [Winter], prior to the date of the incident, had a rapport with K.J. Earlier that day, M.M. and K.J. had spent the afternoon at "the trestle", a creek in the area of Drexel Hill and Clifton Heights, where they went swimming with friends. While they were swimming, [Winter] arrived in his car. [Winter] had a young child along with him and he approached the girls and spoke to K.J. At the conclusion of their discussion, the girls and [Winter] made plans to convene later at [Winter's] house and drink alcohol. [Winter] told the girls that he would get the alcohol for them.

K.J. left with [Winter] in his car and they dropped off the young child while M.M. went home to get a change of clothes. About an hour later, [Winter] and K.J. picked up M.M. and they went to get alcohol. [Winter] purchased Four Loko beer. Afterward, the three returned to [Winter's] home, where there were also three small children and two adults present. M.M. and K.J. played with the children for a short while, and then went out to the back deck to smoke cigarettes. [Winter] poured the beer into plastic cups and the girls drank them on the back deck. Both M.M. and K.J. testified that the beer made them feel intoxicated.

Eventually the small children and two adults went to bed and M.M., K.J., and [Winter] left the deck and went to the living room and watched some television. Later the girls told [Winter] that they were ready for bed and [Winter] said that they could sleep upstairs in his bedroom. [Winter] told the girls that he wanted to sleep on the couch in the living room. When M.M. couldn't make it up the stairs on her own, [Winter] carried her up the stairs over his shoulder. K.J. remained downstairs. When M.M. and [Winter] got to his room, [Winter] laid M.M. on his bed and attempted to kiss her. M.M. turned her head away to avoid [Winter's] advances and she asked him if he would go and get K.J. [Winter] ignored M.M. and proceeded to tell her that she "had a nice body" and touched her stomach. When he continued to ignore her requests for K.J., M.M. began calling K.J.'s name. [Winter] responded by telling her that she was going to wake up the young children in the house and then left the room to get K.J.

[Winter] returned with K.J., and instead of then going back downstairs to the living room to sleep as he had said he would, he remained in the bedroom. He took off his pants and asked the girls if they had ever had a threesome. He then lay down in bed next to them. The girls asked [Winter] to go downstairs to the couch as he had said he would. They also offered to go sleep on the couch instead. [Winter] ignored these requests and attempted to put his hand in M.M.'s pants. M.M. tried to push [Winter's] hand away and asked him to stop. She then moved closer to K.J. In response, [Winter] told M.M. to calm down and he put his hand up her shirt and touched her bra. M.M. then asked [Winter] if he could get them some water and something to

- 2 -

eat. He complied, and returned with two glasses of water and a snack.

When he returned, [Winter] climbed back into the bed in between the girls. The girls again asked him if he would go downstairs, and when he didn't, they left the bedroom together and went into the bathroom. There, the girls decided that they would leave the house and they gathered their belongings and ran downstairs and out the front door. [Winter] gave chase to the girls for a short while but then retreated home. Once they were a distance away, the girls waved down a car and asked the driver to call 911. The girls then went to Delaware County Memorial Hospital.

Trial Court Opinion, filed 5/1/17, at 1-3 (adopted by **Commonwealth v. Winter**, No. 3545 EDA 2016, 2017 WL 5608265, at *1 (Pa.Super. filed 11/21/17) (unpublished mem.)) (citations to trial transcript omitted).

A jury convicted Winter of two counts each of corruption of minors and indecent assault (complainant less than 16 years of age).[1] The court sentenced him to 25 to 50 years' incarceration. Winter filed a direct appeal, and this Court affirmed. In November 2018, the Pennsylvania Supreme Court denied Winter's petition for allowance of appeal.[2]

In November 2019, Winter filed a timely *pro se* PCRA petition. He filed two supplemental petitions on February 24, 2020, and April 19, 2021. In addition, he filed an application to waive appointment of PCRA counsel and proceed *pro se* with standby counsel. After a **Grazier** hearing, the court

---

[1] **See** 18 Pa.C.S.A. §§ 6301(a)(1)(ii) and 3126(a)(8), respectively.

[2] While the petition was pending, Winter sought leave to represent himself and the court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988). Winter's motion to proceed *pro se* was granted on April 18, 2018, and standby counsel was appointed to assist Winter.

- 3 -

granted the application and appointed standby counsel. The court held an evidentiary hearing on the PCRA petition on March 16, 2022, and September 8, 2022.[3] On March 22, 2023, the PCRA court dismissed Winter's petition. This appeal followed.

Winter raises the following issues:

1. Whether trial counsel was ineffective for their failure to object, move for mistrial or request cautionary instructions regarding alleged victim's M.M.'s "little kids" prior bad acts testimony?

2. Whether trial counsel was ineffective for their failure to obtain/present a mental health expert, such as Dr. Markey, to challenge or impeach the competency and/or reliability of alleged victim K.J. with her mental health diagnoses at, or about, the time of her allegations and prior to trial?

3. Whether defense counsel was ineffective for their failure to obtain K.J.'s juvenile criminal record and impeach her on the basis of her outstanding prosecution(s) at the time of trial?

4. Whether trial counsel's misadvice and/or interference with [Winter's] right to testify at trial constituted ineffective assistance?

5. Whether defense counsel's overall deficient trial performance and resulting cumulative prejudice constituted ineffective assistance?

6. Whether counsel's failure to withdraw as appellate counsel or at least request a continuance prior to filing of the initial brief and resulting interference with [Winter's] right to proceed *pro* [] *se* on appeal constituted ineffective assistance?

_____

[3] Winter was represented by two attorneys at trial: Joseph Malley, Esq. and Dana Ingham, Esq. Both attorneys testified at the PCRA hearing.

7. Whether appellate counsel's waiver of [Winter's] preserved sentencing challenges on appeal denied him his right to meaningful appellate review and constituted ineffective assistance?

8. Whether the Commonwealth's failure to disclose K.J.'s outstanding criminal prosecution prior to trial constituted a **Brady** violation warranting a new trial?

9. Whether the mandatory-minimum sentencing provision, 42 Pa.C.S. § 9718.2, [("the Mando"),] used to impose [Winter's] 25-30 year sentences, violated the following protections guaranteed by the U.S. and Pennsylvania Constitutions:

   A. Whether use of [Winter's] 1998 prior conviction to trigger and impose the Mando violated the prohibition against any *ex post facto* laws as commanded by Art. 1, § 9, Cl. 3 & Art. 1, § 10, Cl. 1 of the U.S. Constitution and Pa. Const. Art. I, § 17?

   B. Whether the Act of Nov. 29, 2006, P.L. 1567, No. 178, S.B. 944, which enacted 42 Pa.C.S.[A.] § 9718.2, violated Art. III, § 3, whereby it contained multiple subjects and/or the purpose of § 9718.2 is not clearly expressed in its title?

Winter's Br. at 1-3 (PCRA court answers and footnote omitted).

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

**Claims of Ineffectiveness of Trial Counsel**

Winter's first five issues raise claims of trial counsel's ineffectiveness. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of

ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

*Ineffectiveness Claim for Failing to Object to M.M.'s Testimony*:

Winter first claims that trial counsel was ineffective for failing to object to, or move for mistrial or request a cautionary instruction regarding, a portion of M.M.'s testimony.

On direct examination, the Commonwealth asked M.M. what her and K.J.'s plan was after leaving Winter's home on the night of the incident. M.M. replied,

> At first we weren't going to say anything to the cops because we didn't want to get in trouble with our parents. But then we thought that there was little kids in that house so we thought that going to the cops was the right thing to do for those little kids.

N.T. Trial, 6/29/16, at 70. Winter points out that counsel made no objection to M.M.'s statement and instead began her cross-examination of M.M. by asking about her statement to Sgt. Brown about how they were going to wait

until the morning to go to the police. Winter's Br. at 35. Winter argues that counsel "opened the door for M.M. to not only repeat the inflammatory statement, but also M.M. doubled-down by adding '[K.J.] knew the little kids so that's why [K.J.] said we should go to the cops just in case [Winter]'s doing something to the little kids.'" *Id.* (quoting N.T. Trial at 149-57) (emphasis removed).

Winter maintains that M.M.'s testimony was improper bad acts testimony. He argues that the testimony "implicates or suggests . . . that the jury could reasonably infer that [he] had very possibly engaged in other criminal sexual activity involving those 'little kids.'" *Id.* at 40-41. He asserts that the sole purpose of the testimony "was to deliberately bias the jury by improperly leading them to believe or speculate that [Winter] had possibly also sexually abused the 'little kids' too and thereby unfairly prejudice the jury by forming in their minds fixed bias and hostility toward [him]." *Id.* at 40 (footnote omitted).

Rule 404(b) of the Pennsylvania Rules of Evidence bars admission of evidence of prior bad acts to establish a person's character and to prove that the person acted on a particular occasion in conformity with that character. Pa.R.E. 404(b)(1).

Here, the PCRA court found that M.M.'s testimony did not constitute prior bad acts testimony. It explained:

> [M.M.'s] testimony was merely M.M.'s state of mind at the time of the reporting. It was not prior bad acts testimony as M.M. did not refer to [Winter] previously abusing anyone or

> any specific sexual act to prove [Winter's] act in conformity therewith. She merely expressed her fear for the other children that lived in the multi-family dwelling in that they may be at risk if she and K.J. did not report [Winter].

PCRA Court Opinion, filed 6/6/23, at 4-5.

The court did not err. M.M.'s statements were not prior bad acts testimony. She did not testify that Winter previously abused the children in the house or committed a specific sexual act on a minor victim. M.M. merely explained why she and K.J. decided to go the police. Because an objection based on prior bad acts would not have been proper, trial counsel cannot be ineffective for failing to object. Accordingly, this claim fails. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006) (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim").

*Ineffectiveness Claim for Failing to Retain an Expert*:

Winter argues that trial counsel was ineffective for failing to present a mental health expert at trial to testify about K.J.'s mental health issues. He asserts that trial counsel should have retained an expert to explain to the jury how K.J.'s mental health diagnoses could have impacted her ability to perceive and recollect the events of the night in question. Winter's Br. at 63. Winter maintains that an expert's explanations of K.J.'s mental health issues would bolster his argument that K.J. fabricated the event in retaliation after he rejected her advances. ***Id.*** at 49.

At the PCRA hearing, Winter presented the expert testimony of Dr. John E. Markey, a forensic psychologist. Winter points out that Dr. Markey testified that he was "qualified as a mental health expert in criminal proceedings at the

time of the trial in the underlying case; he was available to testify for the defense at that time; his existence was known within the forensic community, as well as through his website, his profile on Psychology Today or by simple Google search for 'forensic psychologist;' and he would have been willing to cooperate and testify for the defense as provided below at the June 2016 trial had counsel contacted him." **Id.** at 53-54 (footnotes omitted). Dr. Markey did not assess or examine K.J., but rather reviewed her medical records and noted that she had been diagnosed with schizoaffective, schizophrenia and borderline personality disorders, post-traumatic stress disorder, and substance, drug, and alcohol related diagnoses prior to and after the time of the incident and prior to the trial. **Id.** at 54-55; **see also** N.T. PCRA Hearing, 9/8/22, at 15-16, 49. Dr. Markey discussed the general symptoms of these disorders, and stated that these diagnoses "would definitely leave someone to . . . perceive a real or imagined abandonment or rejection, and then to react to that emotionally, dramatically, behaviorally." N.T. PCRA Hearing, 9/8/22, at 46. Dr. Markey testified that he could have sat and listened to K.J.'s testimony at trial and "it's possible [he] could have made some conclusions about [her] testimony." **Id.** at 59.

The admission of expert testimony is within the discretion of the trial court and should not be disturbed on appeal unless the trial court abuses its discretion. **Buttaccio v. Am. Premier Underwriters, Inc.**, 175 A.3d 311, 315 (Pa.Super. 2017). "An abuse of discretion exists where there is an overriding or misapplication of the law, or the exercise of judgment that is

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Gross***, 241 A.3d 413, 418 (Pa.Super. 2020) (internal quotation marks and citation omitted).

"[T]o demonstrate counsel's ineffectiveness for failure to call a witness, a petitioner must prove that the witness existed, the witness was ready and willing to testify, and the absence of the witness' testimony prejudiced petitioner and denied him a fair trial." ***Commonwealth v. Luster***, 71 A.3d 1029, 1047 (Pa.Super. 2013) (*en banc*) (cleaned up). "In particular, when challenging trial counsel's failure to produce expert testimony, 'the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence.'" ***Id.*** (quoting ***Commonwealth v. Bryant***, 855 A.2d 726, 745 (Pa. 2004)).

Here, the PCRA court found Winter's claim to be meritless. PCRA Ct. Op. at 8. The PCRA court did not err. Prior to the trial, the trial court held a competency hearing and found K.J. competent to testify at trial. Trial Ct. Op. at 15. Based on this finding, the trial court ruled that any defense expert was not permitted to interview K.J. ***Id.*** at 15-16. The trial court found that "there was nothing in the record to indicate that the victim's medical diagnoses affected her ability to perceive or recollect the alleged events." ***Id.*** at 16. The court allowed defense counsel "to have his expert present in court during the trial to observe the victim and her testimony and could then cross examine the minor victim regarding her prescribed medication use and/or have his expert opine on the use and the effects of said medication." ***Id.*** at 16 n.6.

This Court affirmed this ruling on direct appeal. ***See Winter***, No. 3545 EDA 2016, 2017 WL 5608265, at *3-4.

The record further indicates that trial counsel attempted to find a defense expert, but was unable to find one that could testify within the limits of the trial court's order. Attorney Ingham testified at the PCRA hearing that the defense team conducted an exhaustive search and interviewed 17 potential experts going "as far as Pittsburgh trying to find one," but was unable to retain an expert. N.T. PCRA Hearing, 3/16/22, at 49, 54, 56. Attorney Ingham stated that the defense almost retained an expert, Dr. Neil S. Kaye, but he declined to participate shortly before the trial because he determined it would be unethical to testify without interviewing K.J. and disagreed with the defense's position that K.J.'s alleged medication mixed with alcohol caused her cognitive impairment or created delusions. ***Id.*** at 56, 64-65.

There was also no indication that Winter's proposed expert, Dr. Markey, would have been permitted to testify at trial. The trial court limited expert testimony to testimony about the effects of K.J.'s medication, and this Court affirmed that ruling on direct appeal. Dr. Markey only testified at the PCRA hearing generally about various mental health disorders and did not opine as to the effects of medication on K.J. N.T. PCRA Hearing, 9/8/22, at 50. He emphasized that he did not examine K.J., and he may have diagnosed her with different diagnoses had he examined her. ***Id.*** at 49-50. Dr. Markey stated that "we never know truly if someone's taking their medication. I don't know enough about [K.J.] to say that." ***Id.*** at 54. Dr. Markey's proposed testimony

thus did not relate to K.J.'s ability to perceive events based on the effects of medication and would be of limited, if any, value.

The PCRA also correctly found that the failure to present an expert did not prejudice Winter. It explained:

> The most important factor tending to show no prejudice is that both K.J. and M.M. reported the same event. Even if an expert were able to testify as to K.J. perceiving events incorrectly based on her medication, it would not have altered the outcome in this matter as M.M. testified to the same event and testified to events that occurred between her and [Winter], some of which occurred outside the view of K.J.

PCRA Ct. Op. at 8.

We agree. Winter's proposed expert testimony would have no bearing on M.M.'s testimony, which corroborated K.J.'s testimony and offered additional details of the assault when K.J. was not in the room. Thus, expert testimony would not have likely changed the outcome of the trial.

*Ineffectiveness Claim for Failing to Obtain K.J.'s Juvenile Record*:

Winter argues that trial counsel was ineffective for failing to obtain K.J.'s juvenile criminal record. He argues that he first learned at the PCRA discovery hearing on February 28, 2021, that K.J. had an outstanding juvenile criminal case in Delaware County for aggravated assault of a police officer that occurred one month prior to his June 2016 trial. Winter's Br. at 74. K.J. also had two juvenile cases for possession of marijuana and for harassment and simple assault in Bucks County in 2016. Winter asserts that he informed his counsel to request and investigate K.J.'s juvenile criminal records. *Id.* He

argues that had counsel obtained K.J.'s records, they could have used "this influential impeachment evidence to at least try to raise a doubt in the minds of the jury as to whether K.J. is bias" and "could have also used this evidence, in conjunction with the omitted mental health expert testimony . . . to further demonstrate K.J.'s pattern of mental instability and violent outbursts." *Id.* at 77. He also argues that counsel could have used this evidence to point out to the jury that K.J. could not recant her allegations at trial "without risking further serious legal trouble that could adversely impact her then-pending cases." *Id.* at 77-78.

A witness may be impeached by evidence of a criminal conviction only if the crime involved dishonesty or false statements ("*crimen falsi*"). **See** Pa.R.E. 609(a).

Here, the PCRA court found that trial counsel made a reasonable decision not to obtain K.J.'s juvenile records and Winter suffered no prejudice. It opined:

> During the PCRA hearing, Attorney Ingham explained that she did not get K.J.'s juvenile record, but did inquire as to whether or not K.J. had any *crimen falsi* issues. (N.T., 3/16/22, p. 119)[.] She further opined that the assault arrest would not have been applicable because she was not arrested for that crime until after the incident in this case occurred. (*Id.*) Attorney Malley explained . . . it would not have been a good tactic to attack the victim, which could have done "more harm than good." (N.T., 9/8/22, p. 114)[.] Neither of these charges would have suggested that K.J. lied about the sexual assaults by [Winter] and, as the Commonwealth and trial counsel pointed out, attacking K.J. about those charges may have actually done [Winter] a disservice in front of the jury. Further, [Winter] cannot show

- 13 -

> how bringing out these prior charges would have changed the outcome of his case. As the Commonwealth pointed out in its post-hearing brief, K.J. and M.M. had already admitted to underage drinking; therefore[,] admitting to underage marijuana possession would likely not have changed a thing in front of the jury.

PCRA Ct. Op. at 8-9.

The PCRA court's conclusions are supported by the record and are free of legal error. K.J.'s other cases were not *crimen falsi* offenses. Further, the aggravated assault offense allegedly occurred one month prior to Winter's trial in June 2016. Winter fails to show how this offense provided motive for K.J. to lie in the present case, when it was undisputed that she reported Winter's sexual assault to the police and the hospital immediately after the incident occurred on August 11, 2014. No relief is due.

*Ineffectiveness Claim for Misadvising about Testifying*:

Winter argues that trial counsel was ineffective for misadvising him regarding his right to testify at trial. He asserts that he informed counsel that he wished to testify on the final day of trial. Winter's Br. at 83. Winter claims that Attorney Malley told him, based on a sidebar conversation with the prosecutor and the judge, that the judge would let Winter's prior conviction for sexual battery in Florida in 1998 come in if he testified. **Id.** at 82-83. Winter maintains that his prior conviction in Florida was based on a *nolo contendere* plea. **Id.** at 82. Citing **Commonwealth v. Moser**, 999 A.2d 602 (Pa.Super. 2010), he argues that evidence of a *nolo contendere* plea is not admissible in later criminal proceedings. **Id.** at 82-83. He therefore asserts that his prior conviction would not have been admissible at trial in this case

- 14 -

and Attorney Malley lied to him about the sidebar discussion wherein the judge said that he would allow the prior conviction to come in. ***Id.*** at 83. According to Winter, "had counsel not lied to or misled him about the sidebar discussion, he most definitely would have testified on his own behalf in this trial." ***Id.*** (emphasis removed). Winter further points out that his prior *nolo contendere* plea for sexual battery did not involve a false statement or dishonesty, and thus, it would be irrelevant and inadmissible. ***Id.*** at 86. Winter concludes that trial counsel should have known his conviction would have been inadmissible at trial and since his "decision not to testify was based solely upon counsel's erroneous advice, his decision cannot be deemed 'knowing' or 'intelligent.'" ***Id.*** at 88 (footnote omitted).

A petitioner may prove that counsel was ineffective for failing to advise him regarding his right to testify by demonstrating "either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." ***Commonwealth v. Washington***, 269 A.3d 1255, 1263 (Pa.Super. 2022) (*en banc*) (citation omitted). Where a petitioner claims trial counsel's ineffectiveness caused him to not testify in his defense, the petitioner establishes the prejudice prong of an ineffectiveness claim by proving that he would not have waived his right to testify "absent counsel's ineffectiveness[.]" ***Commonwealth v. Walker***, 110 A.3d 1000, 1005 (Pa.Super. 2015). However, "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was

ineffective in failing to call him to the stand." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1075 (Pa.Super. 2019) (citation omitted).

Here, the PCRA court found Winter's issue was without merit. PCRA Ct. Op. at 11. It determined that Winter's contention that Attorney Malley lied to him about the discussion wherein the judge said that he would allow the prior conviction to come in was not credible. ***Id.*** The court further found Attorney Malley's testimony at the PCRA hearing that it was his understanding that the trial judge was going to let the conviction in to be credible. ***Id.***

The court did not err. At trial, Winter was fully colloquied on the record about his right to testify. N.T. Trial, 6/30/16, at 99-101. Winter stated that he understood he had the absolute right to testify or not to testify, and decided not to testify. ***Id.*** Winter confirmed that no one had pressured him into not testifying and he was doing so at his own free will. ***Id.*** at 100. While he stated that he received advice from counsel, he recognized that he was permitted to ignore that advice and "in the end, it's [his] decision." ***Id.*** at 101.

Although the sidebar conversation between Attorney Malley, the prosecutor, and the judge, wherein the judge stated that Winter's prior Florida conviction would be admissible, was not transcribed, the trial transcript immediately after Winter's colloquy supports the conclusion that the court would have let the conviction in. The following exchange occurred when Attorney Malley explained why the defense would not be calling any character witnesses on Winter's behalf:

> MR. MALLEY: We have interviewed several of the enumerated prospective individuals, and we have decided strategically not to call any of those witnesses so as not to expose them to potentially damaging cross examination.
>
> . . .
>
> Which could potentially open an area where they could – since we've opened the door – which could potentially open up an avenue, since we've opened up the door to inquire about your past. Do you understand that?
>
> [WINTER]: I understand.
>
> . . .
>
> THE COURT: And it is possible that [the Commonwealth] may bring up your prior conviction from way back. There's no time limitation on those is there? No 10-year period is there?
>
> [THE COMMONWEALTH]: No, sir.
>
> [THE COURT]: No. No. I didn't think so . . . What would happen – what could come out, though, is the fact that they are made aware of your prior conviction –
>
> [WINTER]: Understood.
>
> [THE COURT]: – which was something similar in nature to this. Is that right, [Mr. Malley]?
>
> MR. MALLEY: It is.

*Id.* at 102-04.

Furthermore, at the PCRA hearing, Attorney Malley testified regarding

the decision not to testify:

> [THE COMMONWEALTH]: Had you discussed this prior conviction and whether it would come out with both the Commonwealth and the Judge?
>
> [MR. MALLEY]: Yes.
>
> [THE COMMONWEALTH]: Okay. And what was the Judge's – was it your understanding that the Judge . . .

- 17 -

[MR. MALLEY]: It was going to come in.

[THE COMMONWEALTH]: It was going to come in. And whether or not you agreed with that decision, that's what Judge Mallon had decided?

[MR. MALLEY]: Correct.

[THE COMMONWEALTH]: And was there any doubt in your mind that if Mr. Winter had taken the stand, that [the Commonwealth], therefore, would have brought it in?

[MR. MALLEY]: No doubt whatsoever.

[THE COMMONWEALTH]: Okay. And you said that was one reason why you didn't want him to testify. But you said it wasn't the only reason. Why else did you not want him to testify?

[MR. MALLEY]: Ms. Ingham and I both believed that [Winter's] demeanor may have had a negative impact on the jury.

N.T. PCRA Hearing, 9/8/22, at 118.

Defense counsel thus had other reasons in advising Winter not to testify. *See id.* at 97.

We find the PCRA court's determination to be supported by the record and free of legal error. Winter has failed to prove his trial counsel interfered with his right to testify and has not explained how trial counsel's advice not to testify was unreasonable. **Washington**, 269 A.3d at 1263.[4]

---

[4] To the extent Winter claims that his prior *nolo contendere* plea would not have been admissible under any circumstances, he has not proved that the court would have abused its discretion if it had admitted it. "While the rules of evidence bar the introduction of a plea of *nolo contendere* for purposes other than impeachment, the Commonwealth may introduce evidence of [an a]ppellee's prior bad acts through other means so long as it can demonstrate the probative value of the evidence outweighs the prejudicial impact." **Moser**, 999 A.2d at 607 n.8.

*Ineffectiveness Claim for Overall Deficient Trial Performance*:

Winter argues that trial counsel was ineffective for their overall deficient trial performance. He claims that even if we determine his individual claims fail due to lack of prejudice, he nevertheless is entitled to relief because of the cumulative prejudice caused by counsel's ineffectiveness.

Because we have determined that there were no errors warranting relief, Winter's allegation of cumulative error fails. **See Commonwealth v. Tedford**, 960 A.2d 1, 56 (Pa. 2008) (citation omitted) ("[N]o number of failed claims may collectively warrant relief if they fail to do so individually").

**Claims of Ineffectiveness of Appellate Counsel**

Winter's sixth and seventh issues claim that appellate counsel was ineffective.

In his sixth issue, Winter argues that his appellate counsel, Attorney Malley, was ineffective for failing to withdraw as counsel or request a continuance prior to filing the initial brief on direct appeal, resulting in interference with Winter's right to proceed *pro se* on appeal. He notes that his appellate brief in his direct appeal was due on June 12, 2017, and he sent Attorney Malley a later dated May 15, 2017, informing him that he would be seeking his termination and instructing him not to file any documents on Winter's behalf. Winter's Br. at 92-94. Winter claims that he filed an emergency petition to terminate Attorney Malley and proceed *pro se*, along with a motion for continuance, on May 25, 2017. **Id.** at 94. Winter recognizes that this Court forwarded these documents to his appellate counsel and

- 19 -

attached a **Jette**[5] letter stating that the documents were considered "unfiled." *Id.* Winter maintains that appellate counsel filed an appellate brief on June 12, 2017, "unbeknownst to [him.]" *Id.* However, he argues that once appellate counsel received notification that Winter wished to terminate him, counsel had a duty to cease preparation and filing of the brief, and, if necessary, request a continuance/time extension from this Court or file a motion to withdraw. *Id.* at 96. According to Winter, appellate counsel's "decision to ignore [his] wishes and failure to a motion to withdraw and/or request a continuance prior to the filing of the initial brief . . . effectively violated and/or interfered with [his] right to represent himself *pro* [] *se* on appeal" and "the prejudice is manifest where it would have been [Winter] (not counsel) filing the initial brief in his direct appeal – resulting in ineffective assistance of appella[te] counsel and warranting reversal for new direct appeal *nunc pro tunc* in this case." *Id.* at 97-98.

"An attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court[.]" Pa.R.Crim.P. 120(A)(4); *see also Commonwealth v. Librizzi*, 810 A.2d 692, 693 (Pa.Super. 2002) (stating "once an appearance is entered, the attorney is responsible to diligently and competently represent the client until his or her appearance is withdrawn," which "includes filing an appeal when the client so requests").

---

[5] *Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011).

Here, at the time that Winter's appellate brief on direct appeal was due, Attorney Malley was Winter's attorney of record. Attorney Malley was thus obligated to competently represent Winter, which included the filing of a timely brief unless his appearance was withdrawn by leave of court. When Winter asked Attorney Malley at the PCRA hearing why he filed the appellate brief despite Winter's instructions to the contrary, Attorney Malley correctly explained:

> [U]ntil the Court lets me out, I'm in. You and I are married until I ask for leave of court or you ask for leave of court, and the court specifically lets me out and nominates another attorney or allows you to walk this slippery slope yourself.

N.T. PCRA Hearing, 9/8/22, at 104.

Counsel cannot be deemed ineffective for doing what he was legally and ethically obligated to do. This claim is without merit.

In his seventh issue, Winter argues that appellate counsel was ineffective for waiving his sentencing challenges on direct appeal. Winter claims that he informed counsel that he wanted to raise a constitutional challenge to the mandatory minimum sentencing provision under 42 Pa.C.S.A. § 9718.2, but counsel failed to do so. Winter's Br. at 99. Winter argues that counsel's failure to raise this claim constituted ineffective assistance of counsel.

At the PCRA hearing, Attorney Ingham and Attorney Malley both testified that they advised Winter not to go to trial because of the potential mandatory minimum sentences he was facing. N.T. PCRA Hearing, 9/8/22, at

116-17; N.T. PCRA Hearing, 3/16/22, at 218-21. Counsel stated that Winter was informed that he would be subject to the 25-to-50-year mandatory minimum if he was convicted. N.T. PCRA Hearing, 9/8/22, at 117-18; N.T. PCRA Hearing, 3/16/22, at 221. Counsel thus considered the implications of a conviction under the statute.

Further, the Pennsylvania Supreme Court has upheld the constitutionality of 42 Pa.C.S.A. § 9718.2. *See Commonwealth v. Baker*, 78 A.3d 1044, 1045 (Pa. 2013). Thus, defense counsel had a reasonable basis for choosing not to raise this issue on appeal. Accordingly, this claim fails. *See Spotz*, 896 A.2d at 1210 (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim").

### *Brady* Issue

Winter argues that the Commonwealth's failure to disclose K.J.'s outstanding criminal prosecution prior to trial constituted a *Brady*[6] violation. He maintains that he first learned at the PCRA discovery hearing on February 28, 2021, that K.J. had been arrested and charged with committing aggravated assault of a police officer one month prior to his June 2016 trial. Winter's Br. at 107. Winter asserts that the Commonwealth had an obligation to disclose K.J.'s then-pending prosecution for her aggravated assault to the defense prior to trial "because the defense could have marshalled this vital impeachment evidence to at least cast a shadow upon K.J.'s credibility on the

---

[6] *See Brady v. Maryland*, 373 U.S. 83 (1963).

basis that she was bias and/or had an ulterior motive for her testimony[.]"
*Id.* at 108.

To establish a *Brady* violation, the claimant must prove: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013) (citation omitted). As to *Brady* claims advanced under the PCRA, a claimant must establish that the alleged *Brady* violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Ly*, 980 A.2d 61, 76 (Pa. 2009) (citation omitted).

Here, the PCRA court found that K.J.'s pending juvenile case was not material for purposes of *Brady*. PCRA Ct. Op. at 13. The court did not err. Winter fails to establish that had the information been disclosed to the defense, there is reasonable probability that its production would have caused a different result at trial. K.J.'s aggravated assault arrest occurred one month before Winter's trial, which was well after K.J. and M.M. reported the instant sexual assault. Thus, the disclosure of K.J.'s aggravated assault charge would have had minimal impeachment value to K.J.'s testimony in the present case, as those charges were unrelated and did not demonstrate any propensity for dishonesty. This claim fails.

**Sentencing Claims**

Winter's final claims are constitutional challenges to the mandatory-minimum sentencing provision under 42 Pa.C.S.A. § 9718.2. Winter first claims that using his prior conviction for sexual battery in Florida in 1998 to trigger his mandatory minimum sentence violated the prohibition against *ex post facto* laws. Winter's Br. at 114-15. He maintains that the mandatory-minimum sentencing provision under 42 Pa.C.S.A. § 9718.2 took effect on January 1, 2007, "nearly nine years after the initial/triggering offense was alleged committed, and, thus, retroactively applied in this case." ***Id.*** at 114 (emphasis removed).

Section 9718.2 provides that if a defendant has been convicted of an enumerated offense and already has a prior enumerated conviction, that he be sentenced to a minimum sentence of at least 25 years of total confinement:

> **(a) Mandatory sentence.--**
>
> (1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon such conviction, the court shall give the person oral and written notice of the penalties under paragraph (2) for a third conviction. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

***

> **(b) Mandatory maximum.--**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

42 Pa.C.S.A. § 9718.2(a)(1), (b).

In **Baker**, the Pennsylvania Supreme Court upheld the constitutionality of 42 Pa.C.S.A. § 9718.2. 78 A.3d at 1045.

"A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and inflicts a greater punishment than the law annexed to the crime, when committed." **Commonwealth v. Vaughn**, 770 A.2d 287, 289 n.2 (Pa. 2001) (internal quotation marks and citation omitted). "[C]entral to the *ex post facto* prohibition is a concern for the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." **Commonwealth v. McGarry**, 172 A.3d 60, 68 (Pa.Super. 2017) (citation omitted, emphasis removed). "[I]n discussing recidivist statutes and *ex post facto* implications, courts have consistently noted that defendants are being punished not for the earlier criminal acts and convictions, but for the subsequent crime that occurred after the passage of the pertinent recidivist statute." **Commonwealth v. Rose**, 81 A.3d 123, 135 (Pa.Super. 2013) (*en banc*).

Here, the crimes for which Winter was convicted took place in August 2014, years after Section 9718.2 was enacted. Because Winter committed the

crimes long after the statute had been enacted, Winter's claim of an *ex post facto* violation is without merit.

Winter lastly claims that Section 9718.2 violates Article III, Section 3 of the Pennsylvania Constitution because it contains more than one subject, and the purpose of the statute is not clearly expressed in its title. Winter's Br. at 116. He argues that that the statute's title, "Sentences for sexual offenders," would lead a reasonable person to believe that the statute merely contains standard or general sentencing provisions for sexual crimes, but it instead contains an increased mandatory sentence for repeat sexual offenders. *Id.* at 119-20. Winter further argues that the subjects in the statute are not germane to each other and the subjects are intended "to accomplish separate and dissociated objectives of legislature effort[.]" *Id.* at 121.

"[A]cts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed." *Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 64 A.3d 611, 618 (Pa. 2013). Thus, a statute will not be found unconstitutional "unless it clearly, palpably, and plainly violates the Constitution." *Id.* (citation omitted). If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of finding the statute constitutional. *Id.*

The single subject rule of Article III, Section 3 of the Pennsylvania Constitution states that "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." Pa.

Const. art. III, § 3. In adopting Article III, Section 3, our framers and the electorate sought to eliminate two legislative practices: first, "the insertion into a single bill of a number of distinct and independent subjects of legislation in order to deliberately hide the real purpose of the bill," and second, "the practice of 'logrolling' which involves 'embracing in one bill several distinct matters, none of which could singly obtain the assent of the legislature, and procuring its passage by combining the minorities who favored the individual matters to form a majority that would adopt them all.'" *Commonwealth v. Neiman*, 84 A.3d 603, 611 (Pa. 2013) (citation omitted).

The single subject rule also furthers the efficiency of the legislative process, as

> [t]he requirement that each piece of legislation pertain to only one subject creates a greater likelihood that it will receive a more considered and thorough review by legislators than if it is aggregated with other pieces of legislation pertaining to different topics into a singular "omnibus bill," thereby creating a "jumbling together of incongruous subjects."

*Id.* (citation omitted). Pursuant to the single subject rule, "the title of the bill must clearly express the substance of the proposed law" and "the differing topics within the bill must be 'germane' to each other." *Commonwealth v. Brooker*, 103 A.3d 325, 337 (Pa.Super. 2014) (citation omitted).

Here, we conclude that Section 9718.2 does not violate the single subject rule. "The generally recognized purpose of such graduated sentencing laws [such as Section 9718.2] is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to

conform his life according to the law." ***Commonwealth v. Helsel***, 53 A.3d 906, 913 (Pa.Super. 2012) (citation omitted). Section 9718.2 plainly sets forth the mandatory minimum sentences for recidivist sexual offenders and is limited to that issue. The other topics in the statute, including proof of sentencing and authority of the court in sentencing, are germane to the primary purpose of the statute. Winter's final claim is thus without merit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2025